IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Peggy Pierce, | § | |
| | § | |
| *Plaintiff*, | § | CASE NO. 4:18-cv-01686 |
| | § | |
| v. | § | |
| | § | |
| Fondren Orthopedic Group LLP and | § | |
| Fondren Orthopedic LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS FONDREN ORTHOPEDIC GROUP LLP AND FONDREN
ORTHOPEDIC LTD.'S ORIGINAL ANSWER AND COUNTERCLAIM**

**I.**
**ANSWER**

Defendants Fondren Orthopedic Group, LLP ("FOG") and Fondren
Orthopedic LTD. ("FOLTD") (collectively, "Fondren") answer the allegations made
by Plaintiff Peggy Pierce ("Pierce") in her Original Complaint [ECF No. 1] as
follows:

"Plaintiff's Original Complaint"

1. Fondren admits that Pierce is a former Administrator and former Chief
Executive Officer ("CEO") of FOG, and that she was placed on a leave of absence
on February 8, 2018. Fondren admits that Pierce began her employment with FOG
in 1989 and denies Pierce became its Administrator in 1993. Fondren admits that it

terminated Pierce's employment on March 15, 2018. Fondren admits that Pierce purports to bring a claim now under the Age Discrimination in Employment Act. Fondren is without knowledge sufficient to form a belief regarding the truth Pierce's intentions regarding future amended complaints and therefore denies the same. Except as expressly admitted, Fondren denies the remaining allegations in paragraph 1, and specifically denies that Pierce was terminated on the basis of disability, age, or sex.

2.      Fondren admits that Pierce purports to now bring various claims against Fondren. Fondren denies the remaining allegations in paragraph 2.

<u>The Parties, Jurisdiction, and Venue</u>

3.      Fondren admits the allegations in paragraph 3.

4.      Fondren denies that Dr. Hussein Elkousy is its managing partner, and denies that FOG may be served with process through Doctor Elkousy. Fondren admits the remaining allegations in paragraph 4.

5.      Fondren denies that FOLTD may be served with process through Peggy Pierce, and admits that FOLTD has its headquarters at 7401 South Main Street, Houston, TX 77030.

6.      Paragraph 6 contains legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 6.

7.     Paragraph 7 contains legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 7.

8.     Fondren denies the allegations in paragraph 8.

9.     Fondren admits the Court has subject matter and personal jurisdiction.

10.    Fondren admits that venue is proper in this Court.

<u>Factual Background</u>[1]

A.    "Ms. Pierce Was Instrumental In FOG's Exponential Growth Over More Than A Quarter Of A Century, And In Making Its Physician Partners Millionaires Many Times Over"

11.    Fondren admits that Pierce began her employment with FOG in 1989 and became its Administrator in 1993. Fondren denies the remaining allegations in paragraph 11.

12.    Fondren denies the allegations in paragraph 12.

13.    Fondren admits that in September 2017, Pierce was named CEO of FOG. Fondren admits that in September 2017, Dr. Jeffrey Kozak was the Managing Partner of FOG. Fondren states that the document at Exhibit A to the Original Complaint speaks for itself. Fondren is without knowledge sufficient to form a belief regarding the truth of the remaining allegations in paragraph 13 and therefore denies the same.

---

[1] Pierce's complaint contains numerous headers, which are outside the numbered paragraphs and therefore do not require a response.

14.     Fondren states that the documents contained in Exhibits B and C to the Original Complaint speak for themselves. Fondren denies all remaining allegations in paragraph 14.

B.     "Ms. Pierce Had An Approximately $630,000 Per Year Compensation Package; In Addition, In 2014, FOLTD Agreed To Pay Her Approximately $300,000.00 Per Year For Five Years After Her Employment with FOG Ended"

15.     Fondren admits, upon information and belief, that Pierce began paying herself the equivalent of 10 unit shares from FOLTD's quarterly partnership earnings. Fondren states that the document in Exhibit D to the Original Complaint speaks for itself. Fondren is without knowledge sufficient to form a belief regarding the remaining allegations in paragraph 15 and therefore denies the same.

16.     Fondren states that Exhibit E to the Original Complaint speaks for itself. Fondren is without knowledge sufficient to form a belief regarding the allegations regarding Dr. Woods and therefore denies the same. Fondren denies any remaining allegations in paragraph 16.

17.     Fondren denies the allegations in paragraph 17.

18.     Fondren states that Exhibit A to the Original Complaint speaks for itself. Fondren admits that Pierce received approximately $630,000 in 2017, including distributions equivalent to a 10-unit owner of FOLTD. Fondren admits that in the summer of 2017, Dr. Woods was replaced by Dr. Kozak as managing partner of FOG. Fondren denies the remaining allegations in paragraph 18.

4

C.      "Ms. Pierce Objected to FOG's Unethical Practices; In Response FOG
        Illegally Removed Ms. Pierce From The Workplace And Placed Her On An
        'Indefinite Leave' Based on Her Disability, Age, And Sex"

19.     Fondren lacks knowledge sufficient to form a belief regarding the
allegations regarding Pierce's hair dye and thus denies the same. Fondren denies the
remaining allegations in paragraph 19.

20.     Fondren denies the allegations in paragraph 20.

21.     Fondren lacks knowledge sufficient to form a belief regarding the
allegations regarding Pierce's alleged report. Fondren denies the allegations in
paragraph 21, including footnote 1 to paragraph 21.

22.     Fondren denies the allegations in paragraph 22.

23.     Fondren denies the allegations in paragraph 23.

24.     Fondren admits that Wes Spears was an IT consultant for FOG.
Fondren admits that Pierce instructed Spears to copy Fondren electronic files for her
on February 7 and 8, 2018. Fondren admits Pierce instructed Spears to keep her
request secret. Fondren admits that Pierce instructed Spears to create a false invoice
to hide evidence of her request. Fondren states that Exhibit F to the Original
Complaint speaks for itself. Fondren denies the remaining allegations in paragraph
24.

25.     Fondren lacks knowledge sufficient to form a belief regarding Pierce's
knowledge and thus denies the same. Fondren admits that Wes Spears informed Dr.

Elkousy on February 8, 2018 that Pierce had instructed Spears to copy Fondren electronic files for her. Fondren admits that it placed Pierce on leave that day, and that she was escorted out of the building by a security guard. Fondren states that Exhibit G to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 25.

D.    "Dr. Elkousy Essentially Admitted That FOG's Given Reason For Removing Her From The Workplace And Placing Her On An 'Indefinite Leave' Was A Pretense"

26.    Fondren admits that, on or about February 12, 2018, Dr. Elkousy reiterated to Pierce that she was on a paid leave of absence at that time. Fondren denies the remaining allegations in paragraph 26.

27.    Fondren states that Exhibit H to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 27.

28.    Fondren admits that it placed Pierce on leave on February 8, 2018, and that she was escorted out of the building by a security guard that day. Fondren denies the remaining allegations in paragraph 28.

E.    "Ms. Pierce Alleged Illegal Discrimination, And Defendants Hired A Law Firm To Investigate Her Allegations While She Remained On The Indefinite Leave"

29.    Fondren specifically denies Pierce's allegation of unlawful discrimination. Fondren denies the remaining allegations in paragraph 29.

30.     Fondren admits that Ruth Ann Daniels of Gray Reed & McGraw LLP sent the letter attached as Exhibit I to the Original Complaint in her role as Fondren's outside counsel. Exhibit I speaks for itself. Fondren denies the remaining allegations in paragraph 30.

31.     Fondren admits that Ruth Ann Daniels interviewed Pierce on or about February 27, 2018. Fondren states that Exhibit J to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 31.

F.     "While She Remained On Her 'Indefinite Leave," Ms. Pierce Filed An EEOC/TWC-CRD Charge Of Discrimination, And Sent A Copy Of The Charge To Defendants' Lawyer"

32.     Fondren states that Exhibit K to the Original Complaint speaks for itself.

33.     Fondren will neither admit nor deny Pierce's allegations regarding information allegedly communicated between Fondren and its counsel. Fondren denies the remaining allegations in paragraph 33.

G.     "Two Weeks After She Filed Her EEOC/TWC-CRD, FOG Fired Ms. Pierce, But Did Not Allege That It Had Fired Her For Cause, Or For Any Particular Alleged Wrongdoing – In Fact, It Thanks Ms. Pierce For Her Service And Wished Her The Best In Her Future Endeavors"

34.     Fondren states that Exhibit L to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 34.

35.    Fondren admits that Jeffrey Stocks was named interim CEO of FOG following Pierce's termination. Fondren denies the remaining allegations in paragraph 35.

36.    Fondren states that Exhibit M to the Original Complaint speaks for itself. Fondren admits that Pierce's EEOC/TWC-CRD Charge was timely amended to include her formal termination. Fondren denies any remaining allegations in paragraph 36.

H.    "Defendants Fired Their First Law Firm, And Hired A New Law Firm"

37.    Fondren admits that it is represented by Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C. ("AZA") in this matter. Fondren denies any remaining allegations in paragraph 37.

38.    Fondren admits that on Monday, April 16, 2018, the parties mediated this matter, pre-suit, with mediator Alan Levin and that the matter did not resolve. Fondren states that Exhibit E to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 38.

I.    "Defendants Then Belatedly Unconvincingly Claimed That They Fired Ms. Pierce For Cause, In A Desperate And Doomed Attempt To Get Out Of Paying Ms. Pierce For Approximately $1.5 Million Under The Agreement It Entered With Her In 2014"

39.    Fondren states that Exhibits N, H, and L to the Original Complaint speaks for themselves. Fondren denies the remaining allegations in paragraph 39.

8

40.     Fondren states that Exhibits N and E to the Original Complaint speaks for themselves. Fondren denies the remaining allegations in paragraph 40.

"Claims for Disability, Age, and Sex Discrimination, and Retaliation"

41.     Paragraph 41 is an incorporation of preceding paragraphs of the complaint to which no response is required.

A.     "Liability"

42.     Fondren denies that Pierce establishes an actual or perceived disability as it relates to her claims. The remaining allegations in paragraph 42 are legal conclusions to which no response is required.

43.     Fondren denies that Pierce establishes an actual or perceived disability as it relates to her claims. Fondren lacks information sufficient to admit or deny the allegations regarding Pierce's alleged daily medication in paragraph 43 and therefore denies the same. Fondren denies any remaining allegations in paragraph 43.

44.     Fondren specifically denies that it perceived Pierce as having a disability. The remaining allegations in paragraph 44 are legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 44.

45.     Fondren states that Exhibits I, J, and K to the Original Complaint speak for themselves. Fondren denies the remaining allegations in paragraph 45.

46.     Paragraph 46 states legal conclusions to which no response is required. Fondren denies the remaining allegations in paragraph 46.

47.     Fondren specifically denies Pierce's allegations of retaliation, and specifically denies that Exhibits K, L, and N provide any evidence of retaliation. Fondren states that Exhibits K, L, and N to the Original Complaint speak for themselves. Fondren denies any remaining allegations in paragraph 47.

B.     "Damages"

48.     Fondren admits that Pierce received approximately $630,000 in 2017, including distributions equivalent to a 10-unit owner of FOLTD. Fondren lacks sufficient knowledge to admit or deny Pierce's allegations regarding her current employment status or prospects and thus denies the same. Fondren specifically denies Pierce's allegations regarding substantially equivalent paying positions. Fondren denies any remaining allegations in paragraph 48 and in the footnote to paragraph 48.

49.     Paragraph 49 contains legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to back pay. Fondren denies any remaining allegations in paragraph 49.

50.     Paragraph 50 contains legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to liquidated damages. Fondren denies any remaining allegations in paragraph 50.

51.     Paragraph 51 contains a request for relief and legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to

reinstatement, front pay, or any other award against Fondren. Fondren denies any remaining allegations in paragraph 51.

52.     Paragraph 52 contains legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to compensatory damages or any other award against Fondren. Fondren denies any remaining allegations in paragraph 52.

53.     Paragraph 53 contains legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to punitive damages or any other award against Fondren. Fondren denies any remaining allegations in paragraph 53.

54.     Paragraph 54 contains a request for relief and legal conclusions to which no response is required. Fondren specifically denies that Pierce is entitled to any attorney's fee award. Fondren denies any remaining allegations in paragraph 54.

"Exhaustion"

55.     Paragraph 55 is an incorporation of preceding paragraphs of the Complaint to which no response is required.

56.     Paragraph 56 contains legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 56.

57.     Paragraph 57 contains legal conclusions to which no response is required. Fondren lacks sufficient knowledge regarding Pierce's allegations of intent

to amend her claims and thus denies the same. Fondren denies any remaining allegations in paragraph 57.

58.    Paragraph 58 contains legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 58.

59.    Fondren states that Exhibit K to the Original Complaint speaks for itself. Fondren denies any remaining allegations in paragraph 59.

<u>"Defendants' After-Acquired Evidence Defense Is Meritless"</u>

60.    Paragraph 60 is an incorporation of preceding paragraphs of the Complaint to which no response is required.

61.    Fondren states that Exhibit L to the Original Complaint speaks for itself. Fondren admits that Pierce's employment was terminated on March 15, 2018. Fondren denies the remaining allegations in paragraph 61.

62.    Fondren states that Exhibit N to the Original Complaint speaks for itself. Fondren denies the remaining allegations in paragraph 62.

63.    Fondren states that Exhibits H, I, L, and N to the Original Complaint speak for themselves. Fondren denies the remaining allegations in paragraph 63.

<u>"Breaches of Contract"</u>

64.    Paragraph 64 is an incorporation of preceding paragraphs of the complaint to which no response is required.

65.   "First Breach of Contract Claim." Fondren admits only that Pierce's employment was terminated on March 15, 2018. Fondren states that Exhibits E and L to the Original Complaint speak for themselves. Fondren denies the remaining allegations in paragraph 65.

66.   "Second Breach of Contract Claim." Fondren states that Exhibits E and N to the Original Complaint speak for themselves. Fondren denies the remaining allegations in paragraph 66.

67.   "Third Breach of Contract Claim." Fondren states that Exhibit E to the Original Complaint speaks for itself. Fondren denies the allegations in paragraph 67.

<u>"Declaratory Judgment"</u>

68.   Paragraph 68 is an incorporation of preceding paragraphs of the Complaint to which no response is required.

69.   Paragraph 69 contains legal conclusions to which no response is required. Fondren denies any remaining allegations in paragraph 69.

70.   Fondren states that Exhibits E and N to the Original Complaint speak for themselves. Fondren denies the remaining allegations in paragraph 70.

"Jury Demand"

71.   Fondren admits that Pierce appears to request a trial by jury. Fondren also requests a trial by jury.

"Prayer for Relief"

Fondren admits that Pierce seeks the relief listed. Fondren denies her entitlement to such relief.

## II.
## FONDREN'S AFFIRMATIVE DEFENSES

1. Subject to and without waiving the foregoing, Fondren asserts the following separate defenses, all of which are pleaded in the alternative, some of which may be affirmative defenses on which Fondren will have the burden of proof, and others of which may relate to the elements of Pierce's causes of action. By pleading these defenses, Fondren does not assume the burden of proof on any defenses for which it would not otherwise have the burden of proof under law.

2. Pierce's claims are barred in whole or in part by application of the parol evidence rule.

3. Pierce's discrimination claims are barred because she was terminated for legitimate, non-discriminatory reasons.

4. Pierce's claims are barred in whole or in part by the doctrines of equitable estoppel, promissory estoppel, and quasi-estoppel.

5. Pierce's claims are barred in whole or in part by the doctrine of waiver.

6. Pierce's claims are barred in whole or in part by the doctrine of unclean hands. Pierce's actions discussed in this Original Answer and Counterclaim constitute unlawful or inequitable conduct regarding the issues in dispute, and

otherwise, such that Pierce should be prohibited from recovering any of the relief she seeks.

7.     Pierce's claims are barred in whole or in part because she failed to mitigate her alleged damages, if any.

8.     Pierce's contractual claims are barred in whole or in part for failure of consideration.

9.     Pierce's contractual claims are barred in whole or in part because Fondren was discharged of its obligations by Pierce's earlier repudiations and material breaches of her alleged employment contract.

10.     To the extent any monetary judgment may be entered against Fondren, Fondren is entitled to offset such amount against the obligations that Pierce owes to Fondren.

11.     The facts of this case have not been fully developed, so Fondren reserves the right to amend or supplement this Answer as appropriate and in accordance with the Federal Rules of Civil Procedure.

### III.
### COUNTERCLAIM

Fondren asserts the following against Peggy Pierce:

### Parties, Jurisdiction, and Venue

1.      Fondren Orthopedic Group LLP ("FOG") is an associations of private orthopedic surgery practitioners in Houston. FOG is organized under Texas law and has its headquarters in Houston, TX.

2.      Fondren Orthopedic LTD. ("FOLTD") is an affiliate to FOG, and holds a significant ownership interest in Texas Orthopedic Hospital ("TOH"). FOLTD is organized under Texas law and has its headquarters in Houston, TX.

3.      Peggy Pierce ("Pierce") is an individual who resides in Sugar Land, TX.

4.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case and controversy as the claims raised in Pierce's complaint.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Fondren's claims occurred in this judicial district.

## **Factual Background**

6.      FOG is nationally recognized as one of the largest and most comprehensive associations of private orthopedic surgery practitioners in Houston.

7.      FOG hired Peirce in 1989, and promoted her to the role of Administrator in 1993.

8.      As Administrator, Pierce was FOG's lead business person and healthcare administrator. Pierce was the top non-physician in this role. All employees of FOG reported directly or indirectly to Pierce.

9.      Pierce was named FOG's CEO in August 2017.

**A.      Pierce intentionally fails to pay refunds owed to patients.**

10.     When a patient pays a healthcare provider more than billed charges for medical services, the provider is generally required to provide a timely refund to that patient. A refund may be owed when the patient makes a deposit that ends up being more than the billed charges, where the patient and the patient's insurer combine to pay more than the billed charges, or other circumstances.

11.     Sometime during or prior to 2016, Pierce instituted a policy of intentionally failing to pay significant amounts of patient refunds owed by FOG. Pierce would permit FOG to pay refunds if the patient or the patient's doctor inquired about it, but otherwise generally did not permit such payment.

12.     Pierce's policy of failing to pay substantially all patient refunds naturally created a large backlog of unpaid refunds. In approximately June 2016, Pierce instructed Fondren IT employee Mark Gryder ("Gryder") to make a large batch of patient refunds "disappear" from Fondren's system. Pierce instructed Gryder to keep her request a secret.

13.   Gryder complied with Pierce's instruction. Gryder works with a software called GPMS at Fondren, which is the claim processing and billing software that Fondren uses. To comply with Pierce's instruction, he used GPMS to cause the batch of patient refunds to be "zeroed out," meaning that the patients' accounts with Fondren would falsely reflect nothing was due to the patients despite the fact that FOG owed the patient a refund.

14.   Pierce called this batch of refunds that she instructed Gryder to make "disappear" her "sin batch."

15.   Based on a document that Gryder recently retrieved, the "sin batch" contained $3,767,536.87 of patient refunds.

16.   Sometime after instructing Gryder to write off the refunds in the "sin batch," Pierce asked Gryder to confirm that Fondren's records no longer reflected those refunds as owed to the patients, and also asked him to keep it secret.

17.   Pierce's intentional failure to pay patient refunds caused significant falsification of Fondren's accounting records. Specifically, Fondren's accounting records do not show any outstanding debt or account payable for the amount of the sin batch write off, $3,767,536.87. Fondren is currently investigating this issue.

**B.    Pierce falsifies records of a research institute owned by Fondren.**

18.   Through FOLTD's general partner, Fondren owns and operates a research institute called the Joe W. King Orthopedic Institute ("the Institute").

19.     Fondren provides annual funding to the Institute via Texas Orthopedic Hospital ("TOH"). FOLTD holds a significant ownership interest in TOH.

20.     In January 2018, TOH began an audit of the Institute. The Institute has a contractual obligation to TOH to perform 8,000 of hours related to its mission. For year 2017, the Institute performed just over 5,000 such hours, at most. Instead of admitting that the Institute failed to meet its annual hours obligation, Pierce instructed a subordinate to "make up" at least 3,000 hours to falsely state that the Institute met its 8,000-hour requirement.

21.     At the same time that Pierce instructed this subordinate to provide false reports, she indicated that the employee's job depended on it. The subordinate complied, and Pierce falsely represented that the Institute met its 8,000-hour obligation as part of her response to the audit.

22.     In addition, Pierce submitted false monthly certification to TOH in order to receive funding for the Institute.

**C.     Pierce made unauthorized access to confidential medical records.**

23.     In January 2018, Pierce instructed a Fondren IT employee to log into Fondren's medical records system and obtain prescription information regarding two individuals. The IT employee complied. Pierce did not have legal authorization to access these confidential patient records.

**D.     Pierce secretly deviated from FOG's distribution model.**

24.     In addition, Pierce took actions contrary to Fondren's objectives and policies. For example, the physician partners of FOG agreed to an "eat what you kill" model for partnership distributions, and Pierce represented that was how she managed distributions. However, Pierce secretly deviated significantly from the agreed upon distribution model. She did so by charging certain categories of expenses only to certain partners' accounts, providing illegitimate "credits" to others' accounts, and other methods. The result of Pierce's actions was to improperly inflate the distributions of a small group of FOG partners, while improperly depressing the distributions of the rest.

**E.     Pierce attempted to improperly remove Fondren proprietary and confidential information.**

25.     On February 7 and 8, 2018, Pierce instructed Fondren's outside IT vendor (Wes Spears, owner of Weston Group) to place numerous Fondren documents on a thumb drive for her, including her email account, calendar, and "H-drive." This included Fondren proprietary and confidential information. Pierce did not seek or obtain authorization from anyone at Fondren to do this.

26.     Pierce sought to conceal this activity from Fondren by instructing the IT vendor to create a false invoice for the work: "[Put] something stupid on the invoice and send it to me to have Demetra pay separately." (Text messages from

Pierce to Wes Spears.) She also emphasized that her request was "super secretive and important." (*Id.*)

27.     The IT vendor refused to comply with Pierce's request. He brought the matter to Dr. Elkousy's attention on February 8, 2018. Later that day, Dr. Kozak and Dr. Elkousy asked Pierce to vacate the premises and placed her on leave. Thereafter, the Fondren partners voted unanimously to terminate Pierce's employment.

## Causes of Action

### A.     Breach of Fiduciary Duty

28.     Fondren repeats and re-alleges the foregoing paragraphs and incorporates them by reference as though fully set forth herein.

29.     As FOG's Administrator (and later its CEO), Pierce was an officer of FOG and owed it all fiduciary duties applicable under Texas law, including without limitation the duties of loyalty, care, obedience, and candor.

30.     Pierce breached her fiduciary duties by intentionally failing to pay refunds owed to patients, and hiding that fact from Fondren.

31.     Fondren has been damaged by these actions because its accounting records were falsified, making Fondren unaware of significant amounts of patient refunds it owed.

32.     Pierce benefited by her actions because the falsified accounting records made it appear as if she had assisted in increasing FOG's income by that amount.

This naturally helped her stay in her position as Administrator (and later CEO), reaping generous compensation.

33.    Fondren seeks an award of compensatory damages in an amount to be proven at trial. In addition, Fondren specifically seeks disgorgement and forfeiture of past compensation it paid Pierce in an amount to be determined at trial.

34.    In addition, to the extent Pierce is contractually entitled to any future compensation (which Fondren expressly denies as set forth in its answer and counterclaims), Fondren seeks the remedy of forfeiture for all such amounts.

35.    Pierce additionally breached her fiduciary duties to Fondren by falsifying records relating to the Institute, coercing a subordinate to assisting with falsifying those records relating to the Institute, using her position of power to unlawfully access patient prescription information, secretly deviating from FOG's agreed partnership distribution model, and attempting to remove Fondren proprietary and confidential information. Fondren seeks compensatory damages in an amount to be proven at trial, together with the remedies of disgorgement and forfeiture of Pierce's compensation from Fondren.

**B.    Fraud**

36.    Fondren repeats and re-alleges the foregoing paragraphs and incorporates them by reference as though fully set forth herein.

37.     Through her above-described actions of intentionally failing to pay patient refunds and making those unpaid refunds "disappear" from Fondren's records, Pierce caused Fondren's accounting records to falsely omit accounts payable in the amount of more than $3.7 million. This was a material misrepresentation.

38.     Pierce intended that Fondren would rely on its accounting records as being accurate. Fondren did rely on its accounting records.

39.     As a result of Fondren relying on its accounting records that Pierce falsified, Fondren believed that Pierce was successfully assisting in increasing FOG's income, and therefore Fondren continued to employ Pierce and generously compensate her.

40.     Pierce's intentional failure to pay patient refunds and falsification of Fondren's accounting records has damaged Fondren in an amount to be proven at trial.

## C.     Declaratory Judgment

41.     Fondren repeats and re-alleges the foregoing paragraphs and incorporates them by reference as though fully set forth herein.

42.     Due to Pierce's malfeasance as described above, Fondren has classified her termination as "for cause."

43.    Pierce's actions constitute a failure to perform her job duties in the scope of her employment as a person of ordinary prudence in the orthopedics industry would have done under the same circumstances. Pierce's actions were inconsistent with the continued existence of the employer-employee relationship. Pierce's actions would tend to injure Fondren's business, interests, and reputation.

44.    Fondren therefore seeks a declaration that Fondren's classification of Pierce's termination as "for cause" is proper under Texas law.

45.    Pierce alleges that Exhibit E to her complaint entitles her to post-termination distributions equivalent to a 10-unit owner of FOLTD for five years. Fondren denies this claim as set forth in its Answer, including because Pierce provided no consideration for her alleged entitlement to such post-termination payments.

46.    To the extent Pierce's claim to post-termination payment from Fondren is valid, however, she is not entitled to such payment under the circumstances because she was properly terminated for cause.

47.    Under Texas law, every employee has an implied obligation to refrain from acting in a manner that would tend to injure the employer's business, interest, or reputation. *Gorbet v. Northwood Lincoln-Mercury*, 2005 WL 2875283 (Nov. 3, 2005). An employee who breaches this obligation and is terminated for cause is not

entitled to any post-termination compensation to which she might otherwise be entitled under her employment contract. *Id.*

48.     Therefore, Fondren seeks a declaration that Pierce's for cause termination entitles Fondren to terminate any contractual obligation to make post-termination payment to Pierce, to the extent such obligation exists.

**D.     Conversion**

49.     Fondren repeats and re-alleges the foregoing paragraphs and incorporates them by reference as though fully set forth herein.

50.     In addition to the wrongdoing discussed above, Fondren issued Pierce a corporate cellular phone in connection with her work for Fondren. While Fondren permitted Pierce to possess and to use that phone, it remained at all times the property of Fondren.

51.     Pierce refuses to return this phone to Fondren despite her separation from the company. Pierce thus wrongfully exercises dominion and control over Fondren's personal property.

52.     Pierce's conversion of Fondren property has damaged Fondren in an amount to be proven at trial. In addition, Fondren demands that Pierce return the phone, and any other Fondren property Pierce retains.

### Attorneys' Fees and Costs

53.     Fondren has retained the services of the undersigned law firm to protect its rights, defend against Pierce's causes of action, and prosecute Fondren's causes of action, which are substantially based on an alleged written agreement. Therefore, Fondren requests that it be awarded its reasonable and necessary attorneys' fees and costs on all causes of action for which an award of attorneys' fees and costs is appropriate, including pursuant to any applicable agreement and Chapter 38 of the Texas Civil Practices and Remedies Code.

### Jury Demand

54.     Fondren demands a jury trial and tenders the applicable fee.

### Prayer for Relief

Fondren respectfully requests that the Court deny and dismiss with prejudice all claims set forth in Pierce's Complaint, and enter judgment in favor of Fondren and against Pierce for the following:

(a)     Actual damages;

(b)     Disgorgement;

(c)     Forfeiture;

(d)     Exemplary damages;

(e)     Fondren's reasonable and necessary attorneys' fees and costs of suit;

(f)     Prejudgment and post-judgment interest at the highest interest rates allowed by law; and

(g)    All other relief to which Fondren is entitled.

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Joseph Y. Ahmad*
Joseph Y. Ahmad
Texas Bar No. 00941100
DJ Ringquist
Texas Bar No. (Court admission pending)
Monica Uddin
Texas Bar No. 24075195
1221 McKinney Street, Suite 2500
Houston, Texas  77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
joeahmad@azalaw.com
dringquist@azalaw.com
muddin@azalaw.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 21, 2018, a true and correct copy of this document was electronically filed in accordance with the United States District Court, Southern District of Texas, Procedures for Electronic Filing, and was served on counsel for Plaintiff Peggy Pierce:

    Mark J. Oberti
    OBERTI SULLIVAN LLP
    712 Main Street, Suite 900
    Houston, Texas 77002

                                     */s/ Joseph Y. Ahmad*
                                     Joseph Ahmad