IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEGGY PIERCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1686 |
| | § | |
| FONDREN ORTHOPEDIC GROUP, LLP | § | |
| and FONDREN ORTHOPEDIC LTD., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Peggy Pierce ("Pierce" or "Plaintiff"), sued defendants, Fondren Orthopedic Group, LLP and Fondren Orthopedic Ltd. (collectively, "Defendants"), in this court for federal and state employment claims and state breach of contract claims.

Pending before the court are

Pierce's Motion for Partial Summary Judgment on Two of Her Breach of Contract Claims ("Plaintiff's MPSJ") (Docket Entry No. 9);

Defendants' Objections to Pierce's Evidence in Support of Her Motion for Partial Summary Judgment ("Defendants' Objections to Plaintiff's Evidence") (Docket Entry No. 15);

Fondren Orthopedic Ltd.'s Cross-Motion for Partial Summary Judgment ("FOLTD's Cross-MPSJ") (Docket Entry No. 32);

Fondren Orthopedic, Ltd.'s Objections to Pierce's Evidence in Response to Fondren Orthopedic, Ltd.'s Cross-Motion for Partial Summary Judgment ("FOLTD's Objections to Plaintiff's Evidence") (Docket Entry No. 40);

Snow Goose Corporation's Motion to Intervene (Docket Entry No. 19);

Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim (Docket Entry No. 20); and

Fondren Orthopedic Ltd.'s Motion for Leave to File a Third-Party Complaint ("FOLTD's Motion for Leave to File Third-Party Complaint") (Docket Entry No. 21).

For the reasons stated below, the court will deny Plaintiff's MPSJ, FOLTD's Cross-MPSJ, Snow Goose Corporation's Motion to Intervene, Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim, and FOLTD's Motion for Leave to File Third-Party Complaint.[1]

## I.  Factual Background

Pierce's First Amended Complaint arises from her termination as CEO and Administrator of Fondren Orthopedic Group, LLP ("FOG"). Pierce's Complaint alleges a federal claim for age discrimination under the Age Discrimination in Employment Act and state law claims for disability discrimination, age discrimination, sex discrimination, and retaliation under the Texas Commission on Human Rights Act.[2]  Plaintiff also alleges state law claims for breaches of contract.[3]  Plaintiff's MPSJ addresses only two of Plaintiff's

---

[1]The court need not rule on Defendants' Objections to Plaintiff's Evidence, Docket Entry No. 15, or FOLTD's Objections to Plaintiff's Evidence, Docket Entry No. 40, because the court did not rely on the disputed paragraphs in ruling on Plaintiff's MPSJ or FOLTD's Cross-MPSJ.

[2]See Plaintiff's First Amended Complaint ("Complaint"), Docket Entry No. 36, pp. 14-27.

[3]See id.

pending breach of contract claims.  FOLTD's Cross-MPSJ addresses all three of Plaintiff's pending breach of contract claims.

Defendants are two of a series of interrelated business entities with common management and officers.  FOG, Pierce's former employer, is a Texas limited liability partnership composed of physicians engaged in providing medical services.  FOLTD is a Texas limited partnership formed for the purpose of investing in Texas Orthopedic Hospital, where the physician partners of FOG and FOLTD perform medical services.  FOLTD has no employees.[3]  As a limited partnership, FOLTD is composed of both general and limited partners.  The general partner of FOLTD is Snow Goose Corporation ("Snow Goose").[4]  The limited partners of FOLTD are many of the same physicians who are partners in FOG.[5]  Snow Goose Corporation is a holding corporation, which -- at the time of the events at issue -- was operated by persons who were also partners in both FOG and FOLTD.[6]

---

[3] See Declaration of James B. Bennett, M.D. ("Bennett Declaration"), Attachment 1 to Defendants' Response to Pierce's Motion for Partial Summary Judgment ("Defendants' Response to Plaintiff's MPSJ"), Docket Entry No. 14-1.

[4] See id.

[5] Compare Amendment No. 2 to the Amended and Restated Limited Partnership Agreement of Fondren Orthopedic Ltd. ("Amendment No. 2"), Exhibit O to Affidavit of Peggy Pierce ("Pierce Affidavit"), Docket Entry No. 9-1, pp. 160-61 (listing the limited partners of FOLTD with their accompanying signatures), with Letter to Peggy Pierce from Mufaddal Gombera, MD, Exhibit B to Plaintiff's Original Complaint, Docket Entry No. 1-2 (listing in its letterhead the then partners of FOG).

[6] Compare Exhibit C to Amended and Restated Limited Partnership Agreement of FOLTD, Exhibit O to Pierce Affidavit, Docket Entry (continued...)

Pierce was terminated under disputed circumstances after working for FOG and its related entities for nearly 30 years. Pierce alleges that she was terminated because of her age and her disability,[7] and in retaliation for discovering what Pierce alleges were illegal practices on the part of FOG partners.[8] Defendants assert that Pierce was terminated for misconduct and poor performance.[9]

The motions pending before the court relate only to Pierce's breach of contract claims. Pierce alleges that after she was terminated, FOLTD failed to honor an agreement that she entered into with FOLTD in 2014 ("the Agreement"). The Agreement provides, in relevant part, as follows:

> . . . [T]his will confirm that as long as you are the Administrator of [FOG], an affiliate of [FOLTD], and continue to handle the day-to-day business affairs of [FOLTD], and then continuing for a period of five (5) years after you are no longer performing those responsibilities, whether due to retirement, death, disability or termination, you will continue to be paid

---

[6](...continued)
No. 9-1, pp. 148-49 (listing James B. Bennett, C. Craig Crouch, and G. William Woods as partners in FOLTD), with Snow Goose Corporation Bylaws, Exhibit 1 to Bennett Declaration, Docket Entry No. 14-1, p. 7 (listing Dr. G. William Woods, Dr. C. Craig Crouch, and Dr. James B. Bennett as the initial directors of Snow Goose).

[7]Pierce claims that her termination was based on her medical diagnosis of Multiple Sclerosis, her age (57 years-old), and her sex. See Complaint, Docket Entry No. 36, p. 1.

[8]See Complaint, Docket Entry No. 36, pp. 7-11.

[9]See Defendants Fondren Orthopedic Group LLP and Fondren Orthopedic Ltd.'s Original Answer and Counterclaim ("Defendants' Original Answer and Counterclaim"), Docket Entry No. 8, pp. 17-21.

> a gross amount equal to what a limited partner in the
> Partnership receives from operating income distributions
> based on him then owning 10 Units of limited partner
> [FOLTD] Interests.

> . . .

> You have done an excellent job for [FOLTD] and after
> these many years of dedicated service deserve not only to
> continue sharing in the success of [FOLTD], but to
> benefit past the point when you are no longer working for
> [FOG] and [FOLTD].[10]

The Agreement was signed by Dr. G. William Woods, M.D.
("Dr. Woods") in his capacity as the president of FOLTD's general
partner, Snow Goose. Dr. Woods was also a limited partner in
FOLTD.[11] The Agreement was on Snow Goose letterhead. The enforce-
ability of the Agreement, and Dr. Woods' authority to sign it, are
at issue in this action.

## II. **Pierce's Motion for Partial Summary Judgment and FOLTD's Cross-Motion for Partial Summary Judgment**

In her MPSJ Pierce argues that she is entitled to summary
judgment on two of her breach of contract claims based on
Defendants' breach of the Agreement. Defendants argue in response
that the Agreement is unenforceable for three reasons: lack of
consideration; because Plaintiff was terminated for cause; and
because Dr. Woods did not have actual or apparent authority as

---

[10]See Letter to Peggy J. Pierce from Fondren Orthopedic, Ltd.
Re: Fondren Orthopedic, Ltd. Unit Compensation Distributions
("Pierce Letter from FOLTD re Unit Compensation Distributions"),
Exhibit E to Pierce Affidavit, Docket Entry No. 9-1, pp. 24-25.

[11]See Amendment No. 2, Exhibit O to Pierce Affidavit, Docket
Entry No. 9-1, pp. 160-61.

President of Snow Goose to enter into the Agreement on FOLTD's behalf. In FOLTD's Cross-MPSJ, FOLTD argues that FOLTD is entitled to summary judgment on Pierce's breach of contract claims because Dr. Woods lacked actual or apparent authority to enter into the Agreement as a matter of law.

## A. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about any material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## B. Consideration

A written instrument is prima facie proof of consideration. Taylor v. Fred Clark Felt Co., 567 S.W.2d 863, 867 (Tex. Civ. App. -- Houston [14th Dist.] 1978, writ ref'd n.r.e.). It is the

-6-

defendant's burden to offer evidence to defeat this prima facie proof. <u>Thigpen v. Thigpen</u>, 563 S.W.2d 868, 870 (Tex. Civ. App. -- San Antonio 1978, writ ref'd n.r.e.). The existence (or lack of) consideration is a question of law. <u>Brownwood Ross Co. v. Maverick County</u>, 936 S.W.2d 42, 45 (Tex. App. -- San Antonio 1996, writ denied) (citing <u>Williams v. Hill</u>, 396 S.W.2d 911, 913 (Tex. Civ. App. -- Dallas 1965, no writ). Because there is a written agreement in this case, Defendants must demonstrate that the Agreement is not supported by consideration.

In Texas employments are terminable at-will unless the employer and employee contract otherwise. <u>See Winters v. Houston Chronicle Publishing Co.</u>, 795 S.W.2d 723, 723-24 (Tex. 1990). Under the employment at-will doctrine either the employer or employee can terminate the employment relationship for any reason or no reason at all, at any time. <u>See East Line & R.R.R. Co. v. Scott</u>, 10 S.W. 99, 102 (Tex. 1888).

Defendants argue that the Agreement is not supported by consideration because Plaintiff could have terminated her employment with FOG at any time. However, if "a promise to grant a raise to a terminable-at-will employee is necessarily illusory . . . why is an employer's original promise to pay a certain wage to an at-will employee enforceable when the employee performs?" <u>Vanegas v. American Energy Services</u>, 302 S.W.3d 299, 303-304 (Tex. 2009) (citing 1 John E. Murray, Jr. & Timothy Murray, CORBIN ON CONTRACTS § 1.17 (Supp. Fall 2009)). Defendants' argument would

-7-

render many compensation agreements between at-will employees and their employers unenforceable.

While past services alone may not serve as consideration for a promise, a contract created both to reward an employee for past services and to compensate the employee for future services is supported by consideration. In <u>Pasant v. Jackson National Life Insurance Co.</u>, 52 F.3d 94, 97 (5th Cir. 1995), the court evaluated a contract to compensate an employee for "valuable services" he had rendered to his employer in the past, as well as future services that the employee continued to render until he was terminated. <u>Id.</u> at 97-98. The court held that the employee's continued work for the company until he was terminated provided adequate consideration. <u>Id.</u>

The court is persuaded that the Agreement is supported by consideration. The Agreement does reward Plaintiff for previously performed services to FOG and FOLTD. It states:

> You have done an excellent job for [FOLTD] and after these many years of dedicated service deserve not only to continue sharing in the success of [FOLTD], but to benefit past the point when you are no longer working for [FOG] and [FOLTD].[12]

But the Agreement also states that it is contingent on Pierce's continuing to serve as the administrator of FOG and "continu[ing] to handle the day-to-day business" of FOLTD.[13] Plaintiff continued

---

[12]<u>See</u> Pierce Letter from FOLTD re Unit Compensation Distributions, Exhibit E to Pierce Affidavit, Docket Entry No. 9-1, p. 25.

[13]<u>Id.</u>

to provide services to FOG and FOLTD in compliance with the Agreement until her termination in 2018 -- over three years after the Agreement was executed.[14] The court therefore concludes that the Agreement is supported by consideration.

## C.    Good Cause

Plaintiff argues that the Agreement is enforceable as a matter of law regardless of the reason she was terminated because the Agreement contains no exception for a termination "for cause." Defendants argue that because FOG had good cause to terminate Plaintiff, Defendants have no obligation to pay Plaintiff the 5-year post-termination payments guaranteed by the Agreement. The circumstances of Plaintiff's termination are disputed, and fact issues exist as to whether Plaintiff was terminated for cause.

The Agreement does not contain any language excusing FOLTD's performance in the event Plaintiff was terminated for cause. Furthermore, the Agreement expressly contemplates that five years of payments would be made to Plaintiff regardless of whether she left FOG and FOLTD "due to retirement, death, disability, or **termination**."[15]

One Texas court has read a "for cause" exception into performance of an employment contract by an employer. See Gorbet

---

[14]See Plaintiff's MPSJ, Docket Entry No. 9, p. 10.

[15]See Pierce Letter from FOLTD re Unit Compensation Distributions, Exhibit E to Pierce Affidavit, Docket Entry No. 9-1, p. 24 (emphasis added).

-9-

v. Northwood Lincoln-Mercury, No. 14-04-00813-CV, 2005 WL 2875283, at *1-2 (Tex. App. -- Houston [14th Dist.] Nov. 3, 2005, pet. denied) (unpublished). In Gorbet an employee demanded performance from his employer on his 12-month term employment contract, which required that even if Gorbet was terminated, he was to be paid for the full 12-month period. Id. at *1. Gorbet was terminated for cause under undisputed circumstances -- the only dispute between the parties was whether the employment agreement was enforceable in spite of the fact Gorbet was terminated for cause. The court noted that if an employer is warranted in discharging an employee, the employee is not entitled to "collect the **salary** accruing to him" after the date of his termination. Id. (emphasis added). The court held that because the circumstances of Gorbet's termination were uncontested and Gorbet was terminated for cause as a matter of law, Gorbet was not entitled to the rest of his salary under the contract. Id. at *2.

Plaintiff argues that Gorbet does not apply for three reasons. First, Plaintiff argues that Gorbet's holding is limited to term employment contracts. Second, Plaintiff argues that the employer in Gorbet did not specifically promise to make payments to the employee after termination. Third, Plaintiff contends that the Agreement is distinct from the employment contract in Gorbet because the Agreement was designed in part to reward Plaintiff for her work for FOLTD and FOG, not solely to compensate Plaintiff for future work she would perform for FOLTD and FOG.

Defendants argue that <u>Gorbet</u> applies because the Agreement was between Plaintiff and her employer. Defendants also argue that the promise in <u>Gorbet</u> to pay the plaintiff's salary for the remainder of his employment term if he were terminated is indistinguishable from the promise in the Agreement to pay Pierce for five years post-termination. Defendants also argue that FOLTD's motive for entering into the Agreement is irrelevant to this analysis.

The contract in <u>Gorbet</u> is distinguishable from the Agreement at issue in this case in key respects. First, the contract at issue in <u>Gorbet</u> was for employment for a specified term, rather than an agreement to compensate an at-will employee. Second, and most importantly, the Agreement specifically contemplated paying Plaintiff for five years after her termination in addition to any salary she was receiving through her at-will employment with FOG and FOLTD. There is a difference between continuing to pay an employee a salary for the remainder of an employment term, as in <u>Gorbet</u>, and paying an employee separate severance-like payments promised by the employer in the event the employee was terminated, as in this case.

As a general rule, in evaluating a contract courts should not read in additional terms but should interpret the contract according to its plain meaning. <u>American Manufacturers Mutual Insurance Co. v. Schaefer</u>, 124 S.W.3d 154, 157-59 (Tex. 2003); <u>Coker v. Coker</u>, 650 S.W.2d 391, 393 (Tex. 1983). In the absence of applicable, controlling Texas authority, the court declines to read

-11-

in a "for cause" exception to the Agreement between Plaintiff and FOLTD. The Agreement plainly requires FOLTD to pay Plaintiff five years of payments after her termination. The Agreement does not excuse FOLTD's performance in the event of a for-cause termination. The Agreement is therefore enforceable, regardless of whether Plaintiff was terminated for cause.

## D. Dr. Woods' Authority to Execute the Agreement

Both Plaintiff and FOLTD argue that they are entitled to summary judgment regarding Dr. Woods' authority to execute the Agreement. Plaintiff argues that the Agreement is enforceable because Dr. Woods had actual authority to sign the Agreement on behalf of Snow Goose and FOLTD. In the alternative, Plaintiff argues that Dr. Woods had apparent authority to enter into the Agreement on FOLTD's behalf. Defendants argue that Dr. Woods lacked either actual or apparent authority to execute the Agreement, and that the Agreement is therefore not binding on FOLTD.

### 1. Actual Authority

It is undisputed that Dr. Woods signed the Agreement while he was President of Snow Goose Corporation. Dr. Woods' actions required two levels of authority to be valid: First, Snow Goose needed authority to execute the contract on behalf of FOLTD. Second, because Dr. Woods signed the Agreement as President of Snow Goose, he needed authority to act on behalf of Snow Goose. Snow

-12-

Goose had the authority to enter into contracts on behalf of FOLTD under FOLTD's limited partnership agreement, which expressly vests Snow Goose with such authority.[16] The authority contested by the parties, and the issue before the court, is whether Dr. Woods had authority to act on behalf of Snow Goose.

Absent either actual or apparent authority, an agent cannot bind a principal. <u>IRA Resources, Inc. v. Griego</u>, 221 S.W.3d 592, 597 (Tex. 2007). Actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). <u>Gaines v. Kelly</u>, 235 S.W.3d 179, 182 (Tex. 2007). Actual authority can be either express or implied. Express actual authority exists when the principal has made clear to the agent that he wants the agent to act on the principal's behalf. <u>Pasant</u>, 52 F.3d at 97. Implied actual authority exists when there is only circumstantial proof of actual authority. <u>Id.</u> Implied actual authority may arise from (1) some indication from the principal to the agent that the agent has such authority; (2) a necessary implication of an expressly authorized act; or (3) from a previous course of dealing between the principal and agent. <u>Id.</u>

---

[16]Amended and Restated Limited Partnership Agreement of Fondren Orthopedic Ltd., Exhibit O to Pierce Affidavit, Docket Entry No. 9-1, p. 103 ("12.2 The General Partner may take the following actions if, as, and when it deems any such action to be necessary, appropriate or advisable, at the sole cost and expense of the Partnership: (a) execute any and all documents, contracts,. . . [etc.] . . . .").

Defendants argue that Dr. Woods lacked actual authority to enter into the Agreement because Pierce was an officer of Snow Goose, which required that the Agreement (1) be approved by the Snow Goose Board of Directors under Snow Goose's Bylaws[18] and (2) comply with provisions of Texas law regarding contracts between corporations and their officers.[19] Defendants also argue that while the Agreement may have created an obligation between Plaintiff and FOLTD, any agreement between Plaintiff and FOLTD is also a contract between Plaintiff and Snow Goose because Snow Goose is FOLTD's general partner.

Plaintiff argues that her status as a Snow Goose officer is irrelevant to the enforceability of the Agreement because the Agreement was executed between Plaintiff and FOLTD, not Plaintiff and Snow Goose. The court agrees. The Agreement is between Plaintiff and FOLTD and has nothing to do with Plaintiff's involvement in the management of Snow Goose. The court is therefore not persuaded by Defendants' arguments that the Agreement required approval of the Snow Goose Board because of Plaintiff's alleged status as an officer of Snow Goose.

The court is also not persuaded by Defendants' argument that because Snow Goose is FOLTD's general partner, all FOLTD contracts are necessarily Snow Goose contracts. In its Cross-MPSJ, FOLTD

---

[18]See Snow Goose Corporation Bylaws, Exhibit 1 to Bennett Declaration, Docket Entry No. 14-1, pp. 10-11 ¶ 5.02.

[19]See FOLTD's Cross-MPSJ, Docket Entry No. 32, pp. 8-13.

cites <u>Peterson Group, Inc. v. PLTQ Lotus Group, L.P.</u>, 417 S.W.3d 46 (Tex. App. -- Houston [1st Dist.] 2013, pet. denied), and <u>Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Ass'n</u>, 77 S.W.3d 487 (Tex. App. -- Texarkana 2002, pet. denied), in support of its argument that Texas law considers limited partnerships to be "one and the same" with their general partners.[19]  These cases merely held that the doctrine of alter ego does not apply to the general partners of limited partnerships because there is no need to "veil pierce" in order to hold general partners liable -- general partners are already jointly and severally liable on partnership obligations.   <u>Peterson Group</u>, 417 S.W.3d at 57; <u>Pinebrook Properties</u>, 77 S.W.3d at 499-500.  The fact that Snow Goose could ultimately be held liable on one of FOLTD's obligations does not mean that Snow Goose was a party to all of FOLTD's contracts.  The Agreement was between Plaintiff and FOLTD; it did not purport to create a Snow Goose obligation.  The Agreement did not need to conform to the requirements of the Snow Goose Bylaws or Texas law regarding contracts between corporate officers and corporations.

Snow Goose's Bylaws are only relevant to determining whether Dr. Woods had actual authority to act on behalf of Snow Goose as its President.[20] The president of a corporation has no inherent

---

[19]<u>See</u> FOLTD's Cross-MPSJ, Docket Entry No. 32, p. 8.

[20]In Pierce's Response to Fondren Orthopedic Ltd.'s Cross-Motion for Partial Summary Judgment, she argues that even if the
(continued...)

-15-

authority by virtue of his office. See Franco-Texan Land Co. v. McCormick, 23 S.W. 123, 124 (Tex. 1893); Fitzhugh v. Franco-Texan Land Co., 16 S.W. 1078, 1079 (1891). In the absence of specific authority from the board of directors, the president of a corporation has no authority to contract for the corporation. American Bank & Trust Co. v. Freeman, 560 S.W.2d 444, 446 (Tex. Civ. App. -- Beaumont 1977, writ ref'd n.r.e.). "[A]ctual authority of the president to contract on behalf of the corporation must be found either in specific statutes, in the organic law of the corporation, or in a delegation of authority from the board of directors formally expressed, or must be implied from the nature of his position or from custom or habit of doing business." Templeton v. Nocona Hills Owners Ass'n, Inc., 555 S.W.2d 534, 537 (Tex. Civ. App. -- Texarkana 1977, no writ). The burden is on the party claiming authority to demonstrate that the president had actual authority to act on the corporation's behalf. See In re Westec Corp., 434 F.2d 195, 200 (5th Cir. 1970).

---

[20] (...continued)
restrictions in Snow Goose's Bylaws are applicable, fact questions concerning waiver, quasi-estoppel, ratification, and apparent authority preclude summary judgment for FOLTD. Pierce's Response to Fondren Orthopedic Ltd.'s Cross-Motion for Partial Summary Judgment ("Plaintiff's Response to FOLTD's Cross-MPSJ"), Docket Entry No. 37, pp. 6-13. Because the Agreement was not for Snow Goose officer compensation and Snow Goose is not a party to the Agreement, the restrictions in Snow Goose's Bylaws on contracts between Snow Goose and its officers do not apply. FOLTD's Cross-MPSJ ultimately fails on other grounds because FOLTD cannot prove as a matter of law that Dr. Woods lacked authority (be that authority actual or apparent). The court therefore need not address issues of waiver, quasi-estoppel, and ratification.

Plaintiff presents no evidence that the Snow Goose Board of Directors expressly approved the Agreement signed by Dr. Woods. Because Dr. Woods has no inherent authority as President of Snow Goose under Texas Law and the Snow Goose Board did not approve the Agreement, the court must look to Snow Goose's Bylaws to determine whether Dr. Woods had express actual authority to act as a signatory for Snow Goose. Snow Goose's Bylaws provide that "[t]he President [of Snow Goose] shall have general and active management and control of the business and affairs of the Company . . . ."[22]

Texas courts faced with identical language in corporate bylaws have reached different conclusions as to what authority it gives to the corporation's president. In <u>Fortenberry v. Cavanaugh</u>, No. 03-07-00310-CV, 2008 WL 4997568, at *13-16 (Tex. App. -- Austin Nov. 26, 2008, pet. denied), the court evaluated identical language and concluded that the bylaws as a whole did not authorize a corporate president to act on behalf of the company without specific board authorization, despite the language's seemingly broad grant of authority, because of other delegations to the board of directors in the bylaws. Another court concluded that the same language authorized the president to act as a general manager, and that under Texas law the general manager has authority to act as an agent for the corporation and bind the corporation by contract.

_____

[22]<u>See</u> Snow Goose Corporation Bylaws, Exhibit 1 to Bennett Declaration, Docket Entry No. 14-1, p. 11 ¶ 5.07.

Holman v. Dow, 467 S.W.2d 547, 552 (Tex. Civ. App. -- Beaumont 1971, writ ref'd n.r.e.).

The Snow Goose Bylaws have seemingly conflicting grants of authority to the President and Board of Directors, with broad and somewhat overlapping grants of power to each.[23] The court concludes that the description of Dr. Woods' responsibilities in the Snow Goose Bylaws is not sufficient, standing alone, to support a grant of actual authority to enter into contracts of all types for FOLTD. In the absence of an express grant of actual authority, the court must look to the conduct of Snow Goose and Dr. Woods to determine if Dr. Woods had implied actual authority to sign FOLTD contracts on behalf of Snow Goose.

Dr. Woods acted as a signatory for Snow Goose on documents presented as exhibits by both Plaintiff and Defendants.[24] In her affidavit Pierce states that "[o]n behalf of FOLTD, Dr. Woods unilaterally negotiated, entered into, and signed contracts without a vote of the partners or any prior specific partnership approval."[25] Dr. Woods also acted as a signatory for Snow Goose on a 2005 compensation agreement between Pierce and FOLTD,[26] and there

_____

[23]Compare id. at 11-12 ¶ 5.07, with id. at 7 ¶ 3.01.

[24]See, e.g., Amendment No. 2, Exhibit O to Pierce Affidavit, Docket Entry No. 9-1, p. 159; Snow Goose Corporation Bylaws, Exhibit 1 to Bennett Declaration, Docket Entry No. 14-1, p. 17.

[25]See Pierce Affidavit, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 9-1, p. 12.

[26]See Pierce Letter from FOLTD Re Compensation Distributions, Exhibit D to Pierce Affidavit, Docket Entry No. 9-1, p. 22.

is no evidence that the Snow Goose Board contested the 2005 agreement during the nine-year period between 2005 and 2014, when the Agreement challenged in this action was executed.

Neither Plaintiff nor Defendants have presented definitive evidence demonstrating the scope of authority Dr. Woods was given by Snow Goose to manage the affairs of FOLTD. For summary judgment for Plaintiff to be appropriate, Plaintiff must prove that, based on the evidence presented, reasonable minds could not differ as to whether Dr. Woods had authority. For summary judgment for FOLTD to be appropriate, FOLTD must show that Dr. Woods lacked authority to execute the Agreement as a matter of law. While no evidence has been presented that Snow Goose objected to Dr. Woods signing documents for Snow Goose in Snow Goose's capacity as FOLTD's general partner, Plaintiff has failed to prove as a matter of law that Dr. Woods had direct authorization from Snow Goose, that Dr. Woods' authority to enter into the Agreement was implied from an act expressly authorized by Snow Goose's Board of Directors, that Snow Goose indicated to Dr. Woods that he had authority, or that a previous course of dealing between Snow Goose and Dr. Woods led Dr. Woods to believe he had authority. Therefore, in spite of considerable evidence tending to show that Dr. Woods had actual authority, either express or implied, to execute the Agreement, the court cannot conclude as a matter of law that Dr. Woods either had or lacked actual authority.

## 2.  Apparent Authority

Plaintiff argues in the alternative that FOLTD should be bound by the Agreement because Dr. Woods had apparent authority to execute such an agreement.  Defendants argue that there are fact issues as to whether a reasonably prudent person in Plaintiff's position would believe Dr. Woods had authority to bind Snow Goose. In FOLTD's Cross-MPSJ, FOLTD argues that Dr. Woods lacks apparent authority as a matter of law.

Apparent authority arises "'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'"  Gaines, 235 S.W.3d at 182.  The essential elements required to establish apparent authority are:  (1) a reasonable belief in the mind of the third party of the agent's authority, (2) generated by some holding out or neglect of the principal, and (3) a justifiable reliance on the authority.  2616 South Loop L.L.C. v. Health Source Home Care, Inc., 201 S.W.3d 349, 356 (Tex. App. -- Houston [14th Dist.] 2006, no pet.).  To be bound on an apparent authority theory the principal must have had full knowledge of all material facts.  Gaines, 235 S.W.3d at 182.

To prove Dr. Woods had apparent authority Plaintiff must establish that Snow Goose created a reasonable belief in her mind that Dr. Woods had authority to act for Snow Goose.  While Pierce

-20-

points to instances in which Dr. Woods acted as a signatory for Snow Goose in negotiations for FOLTD, she has presented no evidence that Snow Goose's Board held Dr. Woods out as authorized to execute agreements on behalf of FOLTD. Pierce also argues that the actions of Dr. Woods' successor, Dr. Elkousy, are consistent with Dr. Woods having apparent authority because Dr. Elkousy, upon being made aware of the Agreement, did not object to its validity.[27] Defendants have presented evidence that James Bennett, one of the three members of Snow Goose's then Board of Directors, had no knowledge of the Agreement between FOLTD and Pierce.[28]

In its Cross-MPSJ, FOLTD argues that Dr. Woods lacked apparent authority as a matter of law because Plaintiff was an insider, and therefore could not have formed a reasonable belief of Dr. Woods' apparent authority. FOLTD cites In re Westec Corp., 434 F.2d at 195, in which the Fifth Circuit held that an officer of a corporation could not rely on apparent authority of another officer of the same corporation to create a binding agreement on the corporation's behalf. Id. at 196-200. The court is not persuaded by FOLTD's argument. The Agreement is distinguishable from the one at issue in Westec because the Agreement did not impose an obligation on Snow Goose.

---

[27]See Plaintiff's Response to FOLTD's Cross-MPSJ, Docket Entry No. 37, p. 12.

[28]See Bennett Declaration, Attachment 1 to Defendants' Response to Plaintiff's MPSJ, Docket Entry No. 14-1.

The court concludes that Plaintiff has presented evidence sufficient to create a fact issue on apparent authority based on her knowledge of prior, similar contracts executed by Dr. Woods and Snow Goose's acquiescence to such contracts.[28] As discussed above, while there is a substantial amount of evidence that Dr. Woods had some form of authority, be that authority actual (express or implied) or apparent, to act for Snow Goose to bind FOLTD, the court cannot conclude as a matter of law that Dr. Woods either had or lacked apparent authority to act as a signatory for Snow Goose to bind FOLTD to the Agreement.

### III.  Snow Goose Corporation's Motion to Intervene

Snow Goose, the general partner of FOLTD, filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24(b). Snow Goose argues that it has claims against both Plaintiff and Dr. Woods, the former President of Snow Goose and the person who signed the disputed Agreement, that share common questions of law and fact with the existing claims in this action. Plaintiff argues that Snow Goose's motion should be denied because Snow Goose's claims are meritless and unlikely to contribute significantly to the development of the facts in this action.

_____

[28]See Pierce Affidavit, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 9-1, pp. 12-13 ¶¶ 37, 38 (citing other agreements executed by Dr. Woods, including an instance where Dr. Woods authorized a bonus to an FOLTD employee without a prior vote or approval).

Under Federal Rule of Civil Procedure 24(b) the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). A motion for permissive intervention must not only meet the requirements of Rule 24(b), but it must also be timely filed. Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir. 1977). Plaintiff does not contest that Defendants' motion is timely, only whether Snow Goose's claims share common issues of law and fact such that permissive intervention is warranted.

"Permissive intervention 'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 470-71 (5th Cir. 1984). Appellate review of denials of permissive intervention are reviewed under an abuse of discretion standard. Id. at 471.

When evaluating a request for permissive intervention, "a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues. . . . When a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented absent a showing of adversity of interest, collusion, or

-23-

nonfeasance." <u>League of United Latin American Citizens, Council #4434 v. Clements</u>, 884 F.2d 185, 189 (5th Cir. 1989).

Snow Goose's proposed breach of fiduciary duty claims against Plaintiff stem from the challenged Agreement and Dr. Woods' authority to sign it. Snow Goose alleges that Plaintiff breached her fiduciary duty to Snow Goose because Plaintiff was an officer of Snow Goose who knowingly received unauthorized payments from Snow Goose through the Agreement and allowed unauthorized payments to be made to Dr. Woods.[29] Snow Goose also argues that Plaintiff "aided and abetted" a breach of fiduciary duty by Dr. Woods, who signed the challenged Agreement. Plaintiff responds that she was not an officer of Snow Goose and that even if she were an officer of Snow Goose, the Agreement was between Plaintiff and FOLTD and had nothing to do with her activities for Snow Goose.

As discussed above, the court is not persuaded that the Agreement provided for compensation to Plaintiff as an officer of Snow Goose. The Agreement was executed by FOLTD to compensate Plaintiff for her work for FOLTD and FOG. Merely because Snow Goose was FOLTD's general partner and Snow Goose acted as FOLTD's signatory does not make Snow Goose a party to the Agreement. Most of Snow Goose's proposed breach of fiduciary duty claims against Plaintiff are predicated on the false premise that the Agreement

---

[29]<u>See</u> Snow Goose Corporation's Complaint in Intervention, Exhibit 1 to Snow Goose Corporation's Motion to Intervene, Docket Entry No. 19-1, pp. 9-10 ¶¶ 38-44.

was improper officer compensation for Plaintiff's work as an officer of Snow Goose.[31]  Snow Goose has no right to assert such a claim because the Agreement did not provide for Snow Goose officer compensation to Plaintiff.

Because the Agreement did not provide for compensation to Plaintiff as an officer of Snow Goose, Snow Goose's only remaining breach of fiduciary duty claim against Plaintiff alleges that Plaintiff caused unauthorized payments to be made to Dr. Woods, breaching her fiduciary duties to Snow Goose.  Snow Goose alleges that Dr. Woods authorized improper payments to himself from Snow Goose funds.  Snow Goose refers to these payments as "similar" to the payments received by Plaintiff, which the court has concluded were not Snow Goose officer compensation, but were payments for work Plaintiff did for FOLTD and FOG.  Merely because an individual is an officer of a corporation does not make all income received by that individual "officer compensation" that would require Board approval.   The court is not persuaded that the challenged compensation to Dr. Woods is distinguishable from the compensation to Plaintiff in any significant respect.

In determining whether to allow Snow Goose to intervene, the court must evaluate not only whether Snow Goose's proposed claims share common issues of law and fact with the claims already pending in this action, but also whether Snow Goose's interests are

---

[31]Id.

-25-

adequately represented by FOLTD and FOG. The partners of FOG and FOLTD were often partners in both entities. Some of the partners of FOG and FOLTD were also involved in Snow Goose's management. All three members of Snow Goose's Board of Directors at the time of the challenged Agreement were also partners in FOG and FOLTD.[31]

Plaintiff's claims fall into two categories: breach of contract claims and employment claims -- both stemming from her termination from FOG. Snow Goose has failed to show that its interests differ from FOLTD or FOG's interests in this case. Any breach of fiduciary duty claims against Plaintiff stemming from the Agreement may be asserted by FOLTD. The breach of fiduciary duty claims Defendants assert in their proposed amendments to their counterclaims against Pierce are nearly identical to those asserted by Snow Goose.[32] The court concludes that the interests of Snow

---

[31]Compare Amended and Restated Limited Partnership Agreement of Fondren Orthopedic Ltd., Exhibit O to Pierce Affidavit, Docket Entry No. 9-1, pp. 148-49 (listing C. Craig Crouch, James B. Bennett, and G. William Woods as partners in FOLTD), with Snow Goose Corporation Bylaws, Exhibit 1 to Bennett Declaration, Docket Entry No. 14-1, p. 7 (listing Dr. G. William Woods, Dr. C. Craig Crouch, and Dr. James B. Bennett as the initial directors of Snow Goose).

[32]FOLTD and FOG contend that Pierce breached fiduciary duties to them by both "causing unauthorized payments to be made from FOLTD funds" and "receiving unauthorized payments from FOLTD funds." FOLTD and FOG further argue that Pierce aided a breach of fiduciary duty by Dr. Woods by causing payments to be made both to herself and Dr. Woods. See Defendants Fondren Orthopedic Group LLP and Fondren Orthopedic Ltd.'s Second Amended Answer and Counterclaim ("Defendants' Second Amended Answer & Counterclaim"), Exhibit 1 to Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim, Docket Entry No. 20-1, pp. 23-26 (continued...)

-26-

Goose are adequately represented by FOLTD because the Agreement was between Plaintiff and FOLTD. Intervention by Snow Goose would not contribute significantly to the development of the underlying factual issues in this action. Snow Goose Corporation's Motion to Intervene will therefore be denied.

## IV. FOLTD's Motion for Leave to File a Third-Party Complaint

FOLTD argues that it should be granted leave to file a third-party complaint against Dr. Woods pursuant to Federal Rule of Civil Procedure 14(a) on the ground that if FOLTD is found liable to Plaintiff, Dr. Woods would be liable to FOLTD because Dr. Woods breached his fiduciary duty to FOLTD in executing the Agreement. Plaintiff argues that leave should not be granted because FOLTD's proposed claims against Dr. Woods have no merit.

Federal Rule of Civil Procedure 14(a) provides that, "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). A third-party claim need not

---

[32](...continued)
(contending that Pierce breached her fiduciary duties to FOLTD and FOG by "causing unauthorized payments to be made to her from FOLTD funds" and "concealing the . . . unauthorized payments" from FOG and FOLTD).

be based on the same theory as the main claims in the lawsuit. Southern Railway Co. v. Fox, 339 F.2d 560, 563 (5th Cir. 1964). The district court is given "wide discretion in determining whether to permit such third-party procedure to be resorted to." Id. For a third-party complaint to be proper under Rule 14(a), the third-party plaintiff (or original defendant) must allege that the third-party defendant is secondarily (or derivatively) liable to the third-party plaintiff for an obligation it incurs in the litigation. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 1446 (3d ed. 2011).

Rule 14(a) does not compel a defendant to bring third parties into an action; it simply permits the addition of anyone who meets the standard set forth by Rule 14(a). City of Gretna v. Defense Plant Corp., 159 F.2d 412, 413 (5th Cir. 1947). "In many instances tactical considerations will lead a party to pursue an independent action against a possible third-party defendant rather than resorting to impleader." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 1446 (3d ed. 2011).

A corporate general partner owes fiduciary duties to the limited partnership. Grierson v. Parker Energy Partners 1984-I, 737 S.W.2d 375, 377 (Tex. App. -- Houston [14th Dist.] 1987, no writ). Not only is the corporation itself liable, but an officer of a corporate general partner who is entrusted with the management of a limited partnership and who exercises control over the limited

partnership owes a fiduciary duty to the limited partnership as well. See In re Harwood, 637 F.3d 615, 622 (5th Cir. 2011). Snow Goose owes fiduciary duties to FOLTD. If Dr. Woods was vested with (and exercised) control over FOLTD by virtue of his position as President of Snow Goose, Dr. Woods owed fiduciary duties to FOLTD. Therefore, FOLTD may seek to hold Dr. Woods liable for breaching fiduciary duties he owed directly to FOLTD.

But that does not mean that FOLTD's proposed claims against Dr. Woods are appropriate for impleader under Rule 14(a). For impleader to be proper under Rule 14(a), the third-party plaintiff (or original defendant) must allege that the third-party defendant is secondarily liable to the third-party plaintiff for an obligation it incurs in the litigation. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 1446 (3d ed. 2011). The notion of derivative liability is central to Rule 14(a) and thus "impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty," or the like. Id. A claim that is not derivative of or dependent on the main claim cannot be brought into the controversy under Rule 14(a), no matter how factually analogous it is to the main claim. Id. § 1442. The court is not persuaded by FOLTD's argument that its claims against Dr. Woods are derivative in nature. Merely because FOLTD's proposed breach of fiduciary duty claims against

Dr. Woods arise from the same factual transaction as this action does not make FOLTD's claims against Dr. Woods "derivative" in the sense contemplated by Rule 14(a).

FOLTD argues that in executing the Agreement, Dr. Woods breached his fiduciary duty to FOLTD. "The elements of a breach-of-fiduciary-duty claim [under Texas law] are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.'" Neese v. Lyon, 479 S.W.3d 368, 386 (Tex. App. -- Dallas 2015, no pet.). Dr. Woods' liability to FOLTD for breach of fiduciary duty is not contingent on the outcome of this case. Even if Dr. Woods had general authority to act for Snow Goose in executing contracts on behalf of FOLTD (which would make the Agreement valid) he could still be found liable to FOLTD if the Agreement was not in FOLTD's best interests. If FOLTD is correct that Dr. Woods breached his fiduciary duties to FOLTD in entering into the Agreement with Plaintiff, FOLTD may have a claim against Dr. Woods regardless of how the court resolves Plaintiff's claims. Any breach of fiduciary duty claim that FOLTD has against Dr. Woods may be pursued in a separate action between FOLTD and Dr. Woods. Because FOLTD's proposed claim is not appropriate for Rule 14(a) impleader, FOLTD's Motion for Leave to File a Third-Party Complaint will be denied.

## V. **Defendants' Motion for Leave to Amend**

Defendants seek leave to file an amended answer and counterclaim that adds "additional bases to support [Defendants'] breach of fiduciary duty claim, an additional claim for aiding and abetting breach of fiduciary duty, and the remedy of constructive trust."[33] Defendants recently filed Defendants Fondren Orthopedic Group LLP and Fondren Orthopedic Ltd.'s Third Amended Answer and Counterclaim ("Defendants' Third Amended Answer & Counterclaim") (Docket Entry No. 38), which acknowledged that their Motion for Leave to Amend their counterclaims was still pending before the court.[34] It appears to the court that Defendants' Third Amended Answer & Counterclaim contains the same proposed amendments as Defendants' proposed Second Amended Answer & Counterclaim (Docket Entry No. 20-1), to which Plaintiff objects on the basis of futility.[35]

Under Rule 15 of the Federal Rules of Civil Procedure a party may amend its pleading once as a matter of course within 21 days of

---

[33]Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim, Docket Entry No. 20, p. 1.

[34]See Defendants' Third Amended Answer & Counterclaim, Docket Entry No. 38, p. 1.

[35]Compare Defendants' Second Amended Answer & Counterclaim, Exhibit 1 to Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim, Docket Entry No. 20-1, ¶¶ 28-37, 40, 43, 47-55, with Defendants' Third Amended Answer & Counterclaim, Docket Entry No. 38, ¶¶ 28-37, 40, 43, 47-55.

service.  Fed. R. Civ. P. 15(a)(1)(A).  After the window for amendment as a matter of course closes, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision to grant or deny leave to amend "'is entrusted to the sound discretion of the district court.'"  <u>Pervasive Software, Inc. v. Lexware GmbH & Co. KG</u>, 688 F.3d 214, 232 (5th Cir. 2012).

"Courts within the Fifth Circuit examine five factors to determine whether leave to amend should be granted:  1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment."  <u>Petrobras America, Inc. v. Vicinay Cadenas, S.A.</u>, 921 F. Supp. 2d 685, 689 (S.D. Tex. 2013) (citing and quoting <u>Smith v. EMC Corp.</u>, 393 F.3d 590, 595 (5th Cir. 2004)) (internal quotation marks omitted). Factors one through three (undue delay, bad faith, and repeated failure to cure deficiencies) do not apply.  Nor does Plaintiff allege that Defendants' proposed amendment would cause her undue prejudice.  Plaintiff contests only the futility of Defendants' proposed amendment.  Plaintiff argues that Defendants should not be granted leave to amend because Dr. Woods did not commit a breach of fiduciary duty.  Plaintiff could therefore not have "aided and abetted" such a breach.

The amendments proposed by Defendants rely on the premise that the Agreement (and any additional challenged payments made to Dr. Woods from FOLTD funds) was improper because Dr. Woods lacked authority to unilaterally compensate another Snow Goose officer.[36] While Defendants may have other grounds to support a counterclaim against Plaintiff, Defendants' current proposed amendments are predicated on the incorrect premise that Dr. Woods lacked authority to execute the Agreement because the Agreement provided Snow Goose officer compensation to Plaintiff. Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim will therefore be denied.

## VI. Conclusion and Order

For the reasons stated above, Pierce's Motion for Partial Summary Judgment on Two of Her Breach of Contract Claims (Docket Entry No. 9) is **DENIED**; Fondren Orthopedic Ltd.'s Cross-Motion for Partial Summary Judgment (Docket Entry No. 32) is **DENIED**; Snow Goose Corporation's Motion to Intervene (Docket Entry No. 19) is **DENIED**; Fondren Orthopedic Ltd.'s Motion for Leave to File a

---

[36]See Defendants' Second Amended Answer & Counterclaim, Exhibit 1 to Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim, Docket Entry No. 20-1, pp. 21-23 (arguing that Dr. Woods did not have the authority as President of Snow Goose to promise payments to Plaintiff, who was also an officer of Snow Goose, without prior approval from the Snow Goose Board of Directors).

Third-Party Complaint (Docket Entry No. 21) is **DENIED**; and Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim (Docket Entry No. 20) is **DENIED**.

**SIGNED** at Houston, Texas, on this 28th day of November, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-34-